## McAleenan Boiler Company v. James H. Lines.

### Gen. No. 4,744.

1. FELLOW-SERVANTS—*when question of relation of, one of law.* Where there is no evidence fairly tending to prove that the co-servants were not fellow-servants and the undisputed facts show that the relation of fellow-servants existed, the question is one of law to be determined by the court.

2. FELLOW-SERVANTS—*who not, as matter of law.* An inspector of boilers or a foreman of a boiler-testing department is not, as a matter of law, a fellow-servant of a workman operating a traveling crane.

3. ASSUMED RISK—*rule defined.* A servant assumes all the ordinary risks of his employment when he enters upon it, whether he knows of them or not; he likewise assumes all the extraordinary dangers of which he has knowledge or of which by the exercise of ordinary care he would have knowledge.

Action in case for personal injuries. Appeal from the Circuit court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed March 13, 1907.

STEVENS & HORTON and JOHN M. ELLIOTT, for appellant.

QUINN, QUINN & OTMAN and KING & BOGGESS, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case by appellee, James H. Lines, against the appellant, the McAleenan Boiler Company, brought in the Circuit Court of Peoria county to recover for personal injuries claimed to have been sustained by him by reason of a boiler plate falling upon his leg while employed in appellant's shop.

The suit was tried on issues joined on the second and fourth counts of the amended declaration. The second count charged the operation of a traveling crane by servants of the appellant, not fellow-servants with appellee, and the negligent striking of plates they were handling against the plate rack in the said factory, thereby causing the plate in question to fall upon appellee while in the usual course of his employment and in the exercise of due care for his own safety. The fourth count charged that the plate in question was placed in said rack by servants of appellant, not fellow-servants with appellee, in an unsafe and insecure position and permitted to remain in such unsafe and insecure position for a long period of time, and that by reason thereof said plate fell upon appellee while he was passing near it in the exercise of due care for his own safety. There was a trial by jury, a verdict of $1,800 for appellee, a motion for a new trial and a *remittitur* of $500, motion for a new trial overruled, judgment against appellant for $1,300 and costs and this appeal.

The evidence shows that on June 4, 1904, the day of appellee's injury, the appellant was operating a boiler factory in the city of Peoria, and that appellee was employed therein as inspector of boilers or foreman of the boiler testing department, the department in which the finished boilers were tested. The building was about one hundred by two hundred feet on the ground, with a railroad track running through it about fifteen or twenty feet from the rear, behind which were racks where boiler plates and other mate-

rials were kept. These racks were composed of posts
six inches square set in the ground and projecting
about seven feet. They were set four feet apart
in rows running from the railroad track to the rear
of the building, the rows being two and a half feet
apart. Blocks of wood six inches square were set
in the ground and flush with it, between the rows
opposite the posts. These racks were filled with plates
set slanting, the upper part of them resting against
the top of the posts and the lower part upon
the blocks of wood. The heavy materials in all parts
of the factory were handled by means of an electric
crane which ran on a track twenty-five or thirty feet
above the ground. This was used by men in all de-
partments when needed. It was controlled by levers
operated by a man stationed in a cage which hung
below the crane. The boilers were usually inspected
by appellee about seventy-five feet from the railroad
track near the middle of the shop, but on Friday, the
day before the accident, one which they wished to
test with its own steam was taken to the back part of
the shop where a stack could be run out of a window.
On Saturday morning the boiler was picked up and
set out on the other side of the railroad track in
front of the racks and about ten feet from them.
While appellee was waiting near it for a man to take
out the grate bars so that he might get into the fire
box, a plate known as the pattern plate, ten feet long,
sixteen and a half inches wide and three eighths of
an inch thick fell out of the rack and broke his leg.
At the time of the accident, another of appellee's serv-
ants, named John Cape, working under the direction
of William H. Howells, was using the crane in moving
the plates in the rack, and giving orders to Ed. Besse,
an employe of appellant in the capacity of crane man,
in pursuance of which Besse raised the plates by means
of the crane and struck them against the end of the
rack. The plate which fell was about ten feet away

from the end of the rack where it was struck and lean-
ing toward it.

At the close of appellee's evidence in chief and
again at the conclusion of all the evidence, appellant
moved the court to direct a verdict in its favor on
the ground, first, that the evidence did not tend to
establish the cause of action alleged in the declara-
tion; and second, that the proof conclusively estab-
lished that Besse was a fellow-servant with appellee;
and the rulings of the court in denying these motions
are assigned as error. The most that can be said in
support of appellant's first contention is, that the
evidence is conflicting; but in our opinion the infer-
ences to be drawn therefrom fairly tend to support
the cause of action laid in the second count of the
declaration, and there was no error in denying the
motion on that ground, unless we can say as a mat-
ter of law from the facts herein that Besse and ap-
pellee were fellow-servants. This is embodied in
appellant's second proposition. In Chicago City Ry.
Co. v Leach, 208 Ill. 198, it is said: "What facts will
create the relation of fellow-servants between two
employes of a common master is a question of fact
to be submitted to the jury, but where there is no
evidence fairly tending to prove that they are not
fellow-servants, and the undisputed facts show that
the relation exists, the question is one of law. If
there is any evidence fairly tending to prove the re-
quired averments that they are not fellow-servants
the court should submit the issue to the jury." In
support of the averment in the declaration that the
servants of appellant, through whose negligence ap-
pellee was injured, were not fellow-servants with ap-
pellee, Howells testified that he had a gang of hustlers
working under him near the racks removing cast
fronts and some heads, clearing up there preparatory
to making a place to use what they called a round
house. "One of my men was over there working at the
crane. His name was John Cape. He was handling

some sheets over there." Besse, the man operating the crane, testified that at the time of the accident he was operating the crane for Cape, who gave him signals as to what he wanted done; and that pursuant to certain signals given him by Cape, he swung the plates back and forth against the rack. It is clear from the evidence that appellee and Besse were not associated together in the inspection of the boiler, and that Besse was operating the crane under orders of another servant of appellant not associated with appellee. It is true that the evidence does show that, at times, Besse did operate the crane under appellee's orders. We cannot say that the undisputed facts in this record show that the relation of fellow-servants existed between appellee and Besse, or are so conclusive thereof that all reasonable men must reach the same conclusion thereon, the degree of certainty necessary to make the question one of law calling for the affirmative action of the court; but, on the contrary, we think that the conflict in the evidence bearing on the question of their relation clearly presents a question of fact to be submitted to the jury under proper instructions, and there was no error in the court's denying appellant's motion to direct a verdict on that ground.

Appellant nexts complains of instruction number one given on behalf of appellee. It reads as follows: "The court instructs the jury that the plaintiff, as an employe of the McAleenan Boiler Company, assumed only those dangers of his employment which were apparent and known to him, or such as by exercise of reasonable diligence he could have ascertained." This instruction is erroneous because it says in effect that the servant assumes only those risks which he knows or by the exercise of ordinary care could know. The rule is that the servant assumes all the ordinary risks of his employment when he enters upon it, whether he knows of them or not, because by seeking employment the law presumes that he warrants himself familiar with its ordinary dangers. The servant assumes all the ordi-

598 APPELLATE COURTS OF ILLINOIS.

VOL. 132.] The Galesburg Elec. M. & P. Co. v. Williams.

nary and incidental dangers whether he knows them or not; and in addition he assumes all the extraordinary dangers of which he has knowledge, or of which by the exercise of ordinary care he would have knowledge. C. & E. I. R. R. Co. v. Heerey, 203 Ill. 495. The instruction is defective for another reason, in that it does not state that the appellee assumed the risks of the negligence of his fellow-servants. In Illinois Third Vein Coal Company v. Cioni, 215 Ill. 583, the court said: "It is true that when a servant enters the employment of the master, the ordinary risks of such employment which he assumes include the negligence of fellow-servants associated with him."

For this error the judgment is reversed and the cause remanded.

*Reversed and remanded.*